869 F.2d 594
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
T.E. CUTTINO CONSTRUCTION COMPANY, Plaintiff-Appellant,
v.
RIGID STEEL STRUCTURES; Mesco Metal Buildings, Defendants-Appellees.
 No. 88-3913.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 31, 1988.
Decided: Feb. 17, 1989.
Rehearing and Rehearing In Banc Denied March 21, 1989.
 
 Charles Elford Carpenter, Jr. (Francis M. Mack, Richardson, Plowden, Grier & Howser on brief), for appellant.
 William Dixon Robertson, III (Moore & Van Allen, on brief); Daniel Tompkins Brailsford (Mason G. Alexander, Jr., Robinson, McFadden, Moore, Pope, Williams, Taylor & Brailsford, P.A., on brief), for appellees.
 Before HALL, Circuit Judge, BUTZNER, Senior Circuit Judge, and TERRANCE WILLIAM BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 T.E. Cuttino Construction Company ("Cuttino"), plaintiff in a breach of contract action, appeals the order of the district court granting summary judgment in favor of defendants Rigid Steel Structures ("Rigid") and Mesco Metal Buildings ("Mesco"). For the reasons set forth below, we reverse as to Rigid and affirm as to Mesco.
 
 I.
 
 2
 The facts giving rise to this appeal are basically undisputed. The case arises out of a construction contract administered by the U.S. Navy for a project at Shaw Air Force Base in Sumter, South Carolina. Cuttino was the successful bidder on the project and was awarded the contract. As general contractor, Cuttino contacted Rigid Steel on June 12, 1986, and requested a bid on two metal buildings that were part of the project.[1] Per Rigid's request, Cuttino sent Rigid a set of the government's plans and specifications on June 13, 1986.
 
 
 3
 Because Rigid is merely an authorized dealer for Mesco Metal Buildings who actually manufactures the prefabricated buildings, Rigid forwarded the plans and specifications on to Mesco. The government plans required that the buildings incorporate three features not found in Mesco's standard metal buildings: a parapet facade, sidewall insulation, and special collateral load requirements. Mesco quoted a total purchase price of $83,676 to Rigid in two "Building Quote Request" forms on June 20, 1986. Rigid, in turn, sent Cuttino two "Confirming Sales Order" forms on June 30, 1986, adding Rigid's mark up, quoting a price of $88,667 and requiring a deposit of $17,733. Rigid's sales orders made no reference to the government plans and specifications. Neither did two schematic drawings of the metal buildings which were attached to the orders.
 
 
 4
 On July 3, 1986, Cuttino sent a completed "subcontract" form to Rigid with a check for $17,733. The subcontract incorporated by reference the government plans and specifications submitted by Cuttino to Rigid, and in turn, by Rigid to Mesco. Rigid deposited the $17,733 in its account and sent Mesco $8,417 as its portion of the deposit.
 
 
 5
 During the course of the following several months, Mesco sent several submittals to Rigid, who sent them on to Cuttino. They were rejected by the Navy because they did not comply with the government's plans and specifications. As a result, the submittals were also rejected by Cuttino. The disagreement was over whether the buildings would have the parapet facade, sidewall insulation, and special collateral load requirements required by the government plans. Mesco and Rigid's position was that their quoted price was based on the cost of a standard Mesco metal building. Cuttino asserted that the contract required that the buildings incorporate the special government features.
 
 
 6
 After months of unsuccessful negotiation, Cuttino terminated the contract by letter of November 17, 1986, stating that the company would purchase the buildings elsewhere and requesting that the deposit be returned which Rigid refused to do. When Mesco received a copy of the letter, it cancelled Rigid's orders and charged Rigid a $6,300 cancellation fee.
 
 
 7
 Cuttino subsequently brought this action against Rigid and Mesco for breach of contract alleging that Rigid failed to provide buildings in accordance with the government plans and specifications as required by the contract. Cuttino also alleged that it was a third-party beneficiary of a similar contract between Rigid and Mesco, which Mesco breached.
 
 
 8
 Following discovery, all three parties moved for summary judgment. The district court granted the defendants' motions, finding that neither contract in question required Rigid or Mesco to provide buildings incorporating the government specifications and thus the failure to do so did not constitute a breach of contract. Cuttino appeals.
 
 II.
 
 9
 The contentions in this case can be simply stated, Cuttino contends that the contract between it and Rigid required that the buildings be constructed according to the special government requirements. Rigid contends that it did not.[2]
 
 
 10
 In finding for the defendants, the district court relied on Uniform Commercial Code Section 2-207, as codified in Section 36-2-207, 1976 Code of Laws of South Carolina. That section provides in part:
 
 
 11
 (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
 
 
 12
 (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
 
 
 13
 (a) the offer expressly limits acceptance to the terms of the offer;
 
 
 14
 (b) they materially alter it; or
 
 
 15
 (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
 
 
 16
 The district court found that Rigid's confirming sales orders were an offer and Cuttino's subcontract was an acceptance of that offer. Under Section 207(2)(b), the court found Cuttino's additional terms in the subcontract, i.e., the government plans and specifications, to be proposals for addition to the contract, which did not become part of the contract because they materially altered the terms of the offer as set out in Rigid's confirming sales orders. The court further found that the additional terms in the subcontract were counter proposals that required separate acceptance by Rigid.
 
 
 17
 We agree with the district court that the confirming sales orders were an offer that Cuttino accepted by sending its subcontract and deposit. We also agree that the additional terms in the subcontract materially altered the offer. Nonetheless, we hold that Rigid accepted those terms as part of the contract when it retained the deposit and began work on the project. We base our conclusion on the particular facts of this case where, of great import is the fact that Rigid and Mesco both knew that they were working under a government contract that involved buildings required to be built in accordance with government plans and specifications; where although the confirming sales orders failed to mention the government specifications, the orders were in direct response to a request for a building that conformed with government specifications; and where Cuttino accepted the offer by its subcontract again incorporating the government requirements, and Rigid failed to object or even raise the issue.
 
 
 18
 When Cuttino sent the subcontract and deposit to Rigid, and heard nothing about a dispute in the terms, it was reasonable for Cuttino to rely upon Rigid's silence and then subsequent work as acquiescence.[3] Under the circumstances of this case, commencing work under the contract was in fact an act sufficient to constitute express acceptance of the counterproposals by Rigid.
 
 
 19
 South Carolina has on a number of occasions recognized that a contract should be construed in terms of the practices within the construction industry. Stuckey v. University of South Carolina, 284 S.C. 295, 325 S.E.2d 709 (S.C.App.1985). The practice when dealing with government contracts is to conform to government specifications.
 
 
 20
 For all of the above reasons, we reverse the district court's grant of summary judgment in favor of Rigid. We find that the evidence shows that there was a contract between Rigid and Cuttino that required Rigid to supply two metal buildings in accordance with the government specifications. As to Mesco, we find that there was no contract between Cuttino and Mesco and the district court's grant of summary judgment in favor of Mesco is affirmed. As to Rigid, the case is remanded for a determination of the appropriate damages.
 
 
 21
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 [1]
 After award of the contract to Cuttino, the original supplier of the two metal buildings was not able to comply and Cuttino sought bids from other subcontractors. Cuttino became aware of Rigid Steel Structures through their advertisements
 
 
 [2]
 Although Cuttino also now argues that it had a contract with Mesco, there is no evidence to support that argument and as to Mesco, we affirm the district court's grant of summary judgment
 
 
 [3]
 See U.C.C. Sec. 2-207 comment 6: "If no answer is received within a reasonable time after additional terms are proposed, it is both fair and commercially sound to assume that their inclusion has been assented to."